LINN B. HARGROVE, *as Sheriff of Atchison County*, v. DAVID
H. WOOLF.—JOSEPH COHN & CO. v. ISAAC WOOLF,
*et al.*

INTERPLEA; *Verification; Practice.* Where an interplea is filed by a per-
son under the provisions of § 1, chapter 138, Laws of 1877, with the con-
sent of the court and the parties, without being verified, and thereafter
an answer is filed to the same, and on the trial objection is made to any
evidence being introduced to establish the allegations of the interplea,
upon the ground that it is not verified, the district court has full power,
in the furtherance of justice, under the provisions of § 139 of the code,
to permit the interplea to be verified instanter.

### *Error from Atchison District Court.*

ON January 31, 1884, *David H. Woolf* brought his action
against *Linn B. Hargrove*, as sheriff of Atchison county, to
recover the value of a stock of goods levied upon by him in
the case of Leiberman & Manheimer against Isaac Woolf,
claiming to be the owner of the goods by virtue of a chattel
mortgage executed to him by his son, Isaac Woolf. On
April 22, 1884, he filed his amended petition in the case, and
on April 23, 1884, he filed an interplea in the case of Joseph
Cohn & Co. against Isaac Woolf, claiming to be entitled to
the proceeds of the sale of a stock of goods levied upon by the
sheriff of Douglas county, under a chattel mortgage executed
by his son Isaac. Issue was joined in the case of *David H.
Woolf* against L. B. Hargrove, as sheriff, and also upon the
interplea of *David H. Woolf* in the case of Joseph Cohn & Co.
against Isaac Woolf, the defense in each case being that the
chattel mortgages were fraudulent and void. By agreement
of the parties, the cases were tried as one, at the same time,
and on the same evidence, before the court without a jury.
The court made the following special findings of fact:

"1. During the year 1883, said Isaac Woolf was carrying
on business at Atchison, Kansas, as a dealer in hats, caps and
gentlemen's furnishing goods, and about December 1, 1883,
he started a small branch store at Lawrence, in Douglas county,
Kansas, and he went to Lawrence to manage the business there,

leaving his cousin, Mendel Woolf, to manage the store at Atchison.

"2. Said David H. Woolf is the father of said Isaac Woolf, and on April 10, 1883, said David H. Woolf loaned to said Isaac Woolf the sum of $1,000, taking his promissory note therefor, payable one day after date, with interest at eight per cent. per annum; and on November 26, 1883, said David H. Woolf loaned to said Isaac Woolf the further sum of $500, taking his promissory note therefor, payable one day after date, with interest at eight per cent. per annum.

"3. Afterward, in December, 1883, said David H. Woolf, at the request of Isaac Woolf, advanced to him sums as follows: December 3, check, $100; December 7, check, $175; December 21, check, rent, $55; December 26, $60; December 29, check, $200; December 31, check, $357; total, $947.

"4. On or about January 5, 1884, said David H. Woolf caused to be drawn up with blank dates two promissory notes to be signed by said Isaac Woolf, each payable to the order of said David H. Woolf one day after date — one for $1,000, and one for $1,500, each drawing interest at the rate of eight per cent. per annum; and at the same time two chattel mortgages to secure said promissory notes respectively — the chattel mortgage to secure said $1,000 note being upon said Lawrence stock of goods, and the chattel mortgage to secure said $1,500 note being upon said Atchison stock of goods. On January 7, 1884, said David H. Woolf went to Lawrence and saw said Isaac Woolf there, but said David H. Woolf did not take said blank notes and mortgages with him, and did not say anything to said Isaac Woolf about signing the same, or giving security for said indebtedness.

"5. On January 19, 1884, said David H. Woolf advanced to said Isaac Woolf the further sum of $43 to pay Mendel Woolf for salary; on January 21, 1884, said David H. Woolf again went to Lawrence, taking with him said two blank promissory notes and said chattel mortgage on the Lawrence stock of goods, and on the same day said Isaac Woolf executed all three of said instruments at Lawrence, filling in the date of said promissory note for $1,000 as January 21, 1884, and the promissory note for $1,500 as January 22, 1884, and said chattel mortgage as January 21, 1884; true copies of said promissory notes are set out in the petition in the first-entitled action, and the bill of interpleader in the second-entitled action, and a true copy of said chattel mortgage is set out as an exhibit to said bill of interpleader; said chattel mortgage was

duly filed and entered in the office of register of deeds of Douglas county, Kansas, on January 21, 1884, and by consent of said Isaac Woolf said David H. Woolf took immediate and actual possession of said Lawrence stock of goods described herein; and at the request of said David H. Woolf, who remained at Lawrence, said Isaac Woolf came to Atchison, and on January 22, 1884, executed the chattel mortgage on the Atchison stock, a true copy of which is annexed to the petition in the first-entitled action as an exhibit, said chattel mortgage being dated January 21, 1884; said chattel mortgage was duly filed and entered in the office of the register of deeds of Atchison county, Kansas, on January 22, 1884, at 10 o'clock A. M., and by a previous agreement between said David H. Woolf and Isaac Woolf, said Isaac Woolf immediately turned said Atchison stock of goods over to said Mendel Woolf, as agent of said David H. Woolf, and from said time said Mendel Woolf held possession of said Atchison stock of goods as such agent of David H. Woolf. On the execution and delivery of said two notes and chattel mortgages, said David H. Woolf delivered up to said Isaac Woolf said promissory note of April 10, 1883, for $1,000, and said promissory note of November 26, 1883, for $500.

"6. On January 23, 1884, Louis S. Leiberman and Joseph C. Manheimer, partners as Leiberman & Manheimer, commenced an action in this court against said Isaac Woolf to recover the sum of $830.15 on an account for goods and merchandise, together with interest thereon from December 14, 1883; and upon due proceedings therefor, an order of attachment was issued in said action upon said claim against said Isaac Woolf, which order of attachment came into the hands of the sheriff of this county at 11 o'clock A. M. of said day; and thereafter, on said day, said sheriff levied said attachment in due form of law upon said Atchison stock of goods described in said Atchison chattel mortgage, upon goods of David H. Woolf of about the value of $21.25, in the trunk of said David H. Woolf, and he caused an inventory thereof to be made and duly returned with said writ; and the said sheriff took the said goods into his posession.

"7. On January 23, 1884, said Joseph Cohn & Co. commenced an action in this court against said Isaac Woolf to recover the sum of $144.55 on an account for goods and merchandise, together with the interest thereon from December 8, 1883; and upon due proceedings after jurisdiction therefor had been properly acquired, an order of attachment was duly

issued to the sheriff of said Douglas county in said action upon said claim against said Isaac Woolf, which order of attachment came into the hands of said sheriff of Douglas county on January 24, 1884, at 1 o'clock P. M., and thereafter on said day said sheriff levied said attachment in due form of law upon said Lawrence stock of goods described in said Lawrence chattel mortgage; and he caused an inventory thereof to be made and duly returned with said writ; and the said sheriff took said goods into his possession.

"8. After the appointment of a receiver, said Lawrence stock was shipped to Atchison, and the same was sold with said Atchison stock, but a separate account was kept of each stock; said Lawrence stock was sold for $166.85, which was the market value thereof; and said Atchison stock, including the individual goods of David H. Woolf, taken from his trunk, was sold for $550.40, which was the market value thereof.

"9. Before the commencement of the first-entitled action, said David H. Woolf, plaintiff therein, duly demanded of said sheriff of Atchison county the possession of said Atchison stock of goods, and he also made due demand for said Lawrence stock of goods.

"10. Said Isaac Woolf has never paid to said David H. Woolf any part of the indebtedness mentioned in conclusions of fact 2, 3 and 5, nor any part of said two promissory notes, executed January 21, 1884, for $1,000 and $1,500 respectively, which were given in renewal of said indebtedness as mentioned in conclusions of fact 4 and 5.

"11. At the time of taking said two last-mentioned promissory notes and said two chattel mortgages, said David H. Woolf had good reason to believe, and he did believe, that said Isaac Woolf was insolvent, and that unless said indebtedness was secured, he, the said David H. Woolf, would lose the same."

And thereon the court made the following conclusions of law:

"1. In the first-entitled action, the plaintiff, David H. Woolf, is entitled to recover of the defendant, Linn B. Hargrove, the value of said Atchison stock of goods, including the individual property taken from the trunk of said David H. Woolf, amounting in all to the sum of $550.40, and also the costs of suit.

"2. In the second-entitled action, the interpleader, David H. Woolf, is entitled to recover the sum for which said Law-

rence stock of goods was sold, to wit, the sum of $166.85, and said Joseph Cohn & Co. have no right to the same; but said David H. Woolf is not entitled to recover any costs in said interpleader proceeding."

Afterward the court gave judgment for David H. Woolf against the sheriff for $550.40, the value of the Atchison stock of goods, and for David H. Woolf upon his interplea in the case of Joseph Cohn & Co. against Isaac Woolf, for the sum $166.85. *Linn B. Hargrove*, as sheriff, and *Joseph Cohn & Co.* excepted to the rulings and judgments of the court, and bring their cases here. Only one case-made is filed, but separate petitions in error are attached thereto.

*Jackson & Royse*, for plaintiffs in error.

*Mills & Wells*, for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: It appears from the record that the interplea of David H. Woolf was filed with the consent of the court and of the parties without verification. To this interplea, Cohn & Co. filed their answer, setting forth their defenses fully, and asking the chattel mortgage described therein to be declared fraudulent. Upon the trial, they objected to any evidence being offered, because the interplea was not verified. Thereupon the court permitted the verification. This is alleged as error. The section under which the interplea was filed reads as follows:

"Any person claiming property, money, effects or credits attached, may interplead in the cause, verifying the same by affidavit, made by himself, agent or attorney, and issues may be made upon such interpleader and shall be tried as like issues between plaintiff and defendant, and without any unnecessary delay." (Laws 1877, ch. 138, §1; Civil Code, §45*a*.)

There was no error or abuse of discretion on the part of the court in allowing the interplea to be verified. Full authority is given therefor by the provisions of §139 of the code. It does not appear that Cohn & Co. were surprised, and they made no application for a postponement or continuance of the trial on account

Interplea; verification; practice.

of the verification. Under said § 139 great latitude is given to the district court in permitting pleadings and proceedings to be amended, especially when they are occasioned by mistake, or are the result of oversight, and it can be seen that by so doing substantial justice will be done. The amendment allowed was clearly in the furtherance of justice, and was very properly granted. (*Gaylord v. Stebbins*, 4 Kas. 42; *Taylor v. Clendening*, 4 id. 524; *National Bank v. Tappan*, 6 id. 456; *Wilson v. Phillips*, 8 id. 211; *Simpson v. Greeley*, 8 id. 586; *Railway Co. v. Nichols*, 9 id. 235; *Davis v. Wilson*, 11 id. 74; *Prater v. Snead*, 12 id. 447; *Kunz v. Grund*, 12 id. 547; *Wright v. Bacheller*, 16 id. 259.)

It is next urged that the findings of the district court are not sustained by the evidence. In support of this, it is said that David H. Woolf never made to Isaac Woolf the loans and advances claimed by him; that the evidence shows that David H. Woolf, Isaac Woolf, his son, and Mendel Woolf, their agent, arranged to defraud the creditors of Isaac Woolf at the time of the loan of $500 on November 26, 1883, and from that time on to the failure of Isaac Woolf, that each of the parties acted together to carry out a scheme to cheat and defraud the creditors of Isaac Woolf; that the circumstances attending the preparation and execution of the chattel mortgages show the fraudulent purpose of David H. Woolf and his son, Isaac Woolf, to defraud the creditors of the latter; and that the chattel mortgages executed to David H. Woolf were all taken by him with the intent of assisting his son, Isaac Woolf, to cheat and delay his creditors. We have read the evidence in the case, with the comments of counsel, and confess that if the cases were before us upon trial *de novo*, we might take a different view of some of the evidence from the learned trial judge; but upon review, all we can say is that the evidence is conflicting. Even if we assume the preponderance of the evidence is against some of the findings, we would not be justified in granting new trials, as it is the established rule of this court that the verdict of a jury will not be disturbed if there is sufficient testimony to sustain it; and that the findings of a district court upon questions of fact,

where the evidence is conflicting, are as conclusive as the verdict of a jury. The findings of fact must therefore stand as made by the trial judge. (*Railway Co. v. Kunkel,* 17 Kas. 145; *Hobson v. Ogden,* 16 id. 388; *Gibbs v. Gibbs,* 18 id. 419.)

Finally, it is claimed that the court erred in assessing the amount of recovery of David H. Woolf upon his interplea in the sum of $166.85. It is said that he was entitled to recover only $157.35, if entitled to judgment for anything, as the goods which came into the hands of the sheriff of Douglas county, claimed under the interplea, sold for only $157.35. It is asserted that the trial court added to the $157.35 the value of a mirror and trunk levied upon in Atchison county, which were sold for $9.50. The record, as presented to us, is somewhat confusing, but does not clearly bear out the assertion. It is stated in the case-made, as an admitted fact, that in the action of Cohn & Co. against Isaac Woolf, a writ of attachment was issued to the sheriff of Douglas county, and a stock of goods levied upon in that county; that the same were sold by the receiver for the sum of $166.85. In another portion of the record, Charles B. Graham testifies "that he sold the Lawrence stock of goods for $157.35, including what was levied on in the Cohn & Co. case in Atchison county." Error is not to be presumed; and as the finding of the court upon the value of the goods seized in Douglas county seems to be in harmony with the recitation of an admitted fact in the case-made, we must accept the finding upon this point as true. (*Humphrey v. Collins,* 23 Kas. 549; *McCoy v. Whitehouse,* 30 id. 433.) A mirror and trunk are mentioned in the answer to the interplea, but we cannot find anywhere in the record that they were sold for $9.50, although Graham, the deputy sheriff, testified that the goods levied upon in Atchison county in the Cohn & Co. case were appraised from $8 to $13. There are other matters referred to in the petitions in error, but they are not discussed or mentioned in the briefs; therefore we need not notice them. (*Wilson v. Fuller,* 9 Kas. 176; *Sullenger v. Buck,* 22 id. 28.)

The judgment of the district court will be affirmed.

All the Justices concurring.